UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

ARTHUR JACKSON,

                Plaintiff,               Case No. 2:10-cv-96

v.                                     Honorable Robert Holmes Bell

GARY CAPELLO, et al.,

                Defendants.
_____/

**REPORT AND RECOMMENDATION**

        This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. Plaintiff names Defendants AMF Warden Gary Capello, Resident Unit Officer Todd Bastian, Corrections Officer Anthony Kulie, Corrections Officer Alan Rule, AMF Deputy Warden Jeff Larson, Assistant Resident Unit Supervisor Todd Tollefson, Department Analyst Terri Smith, Corrections Resident Representative Stephen Raymond, Dr. M. Comfort and Dietician Kelly Wellman.  On May 28, 2010, Plaintiff filed an amended complaint against all defendants (docket #5).  On November 1, 2010, Defendants Capello, Bastian, Kulie, Rule, Larson, Tollefson, Smith and Raymond filed a motion for summary judgment (docket #68) on the ground that Plaintiff failed to exhaust his available administrative remedies, as well as on the merits.  In addition, on December 1, 2010, Defendant Bastian filed a motion for summary judgment (docket #76).  Plaintiff filed a response in opposition to the motions for summary judgment (docket #84) on December 29, 2010.  On February 4, 2010, Defendant Wellman filed a motion for summary judgment (docket

#101). Plaintiff filed a response (docket #110) on April 18, 2011. Upon review, I recommend that Defendants' motions for summary judgment be granted.

Summary judgment is appropriate when the record reveals that there are no genuine issues as to any material fact in dispute and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); *Kocak v. Comty. Health Partners of Ohio, Inc.*, 400 F.3d 466, 468 (6th Cir. 2005); *Thomas v. City of Chattanooga*, 398 F.3d 426, 429 (6th Cir. 2005). The standard for determining whether summary judgment is appropriate is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *State Farm Fire & Cas. Co. v. McGowan*, 421 F.3d 433, 436 (6th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)); *see also Tucker v. Union of Needletrades Indus. & Textile Employees*, 407 F.3d 784, 787 (6th Cir. 2005). The court must consider all pleadings, depositions, affidavits, and admissions on file, and draw all justifiable inferences in favor of the party opposing the motion. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Twin City Fire Ins. Co. v. Adkins*, 400 F.3d 293, 296 (6th Cir. 2005).

A prisoner's failure to exhaust his administrative remedies is an affirmative defense, which Defendants have the burden to plead and prove. *Jones v. Bock*, 127 S. Ct. 910, 919-21 (2007). A moving party without the burden of proof need show only that the opponent cannot sustain his burden at trial. *See Morris v. Oldham County Fiscal Court*, 201 F.3d 784, 787 (6th Cir. 2000); *see also Minadeo v. ICI Paints*, 398 F.3d 751, 761 (6th Cir. 2005). A moving party with the burden of proof faces a "substantially higher hurdle." *Arnett v. Myers*, 281 F.3d 552, 561 (6th Cir. 2002); *Cockrel v. Shelby County Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001). "Where the moving party

has the burden -- the plaintiff on a claim for relief or the defendant on an affirmative defense -- his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986) (quoting W. SCHWARZER, *Summary Judgment Under the Federal Rules: Defining Genuine Issues of Material Fact*, 99 F.R.D. 465, 487-88 (1984)).   The United States Court of Appeals for the Sixth Circuit repeatedly has emphasized that the party with the burden of proof "must show the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it." *Arnett*, 281 F.3d at 561 (quoting 11 JAMES WILLIAM MOORE, ET AL., MOORE'S FEDERAL PRACTICE § 56.13[1], at 56-138 (3d ed. 2000); *Cockrel*, 270 F.2d at 1056 (same).   Accordingly, summary judgment in favor of the party with the burden of persuasion "is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact." *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999).

Plaintiff is presently incarcerated at the Chippewa Correctional Facility (URF). Plaintiff sues all defendants in their official and individual capacities and contends that they violated his rights under the First and Eighth Amendments.   After Plaintiff was involved in an altercation where he stabbed another inmate with his hobby craft scissors, he was transferred to the Baraga Maximum Correctional Facility (AMF) as a Level IV segregation inmate.   According to Plaintiff, upon his arrival at AMF various items of personal property were confiscated by Defendants Rule and Kulie.   Plaintiff contends that Defendants Raymond and Smith refused to give him a grievance form to contest this confiscation.

Plaintiff alleges that when he gave his medical kite to Defendant Tollefson for delivery to the Healthcare kite box, Defendant Tollefson trashed his kite.   Plaintiff also alleges that

Defendant Tollefson failed or refused to provide him with the supplies he requested for his legal work, and that this delay caused him to suffer from stress and high blood pressure.  Furthermore, Plaintiff maintains that Defendant Bastian tampered with his food, spat on his food tray, and served him a breakfast that caused sharp pains in his stomach.  Plaintiff also alleges that Defendants Capello and Larson were informed of these incidents, but failed to take any type of corrective action. Plaintiff alleges that Defendant Wellman deprived him of a therapeutic diet to accommodate his acid reflux, causing him inflammation and stomach pain, chest pain and heartburn, a sore esophagus, and stress and high blood pressure.  Plaintiff seeks compensatory and punitive damages.

Defendant Wellman maintains he is entitled to summary judgment because Plaintiff failed to exhaust his available administrative remedies.  Pursuant to the applicable portion of the Prison Litigation Reform Act (PRLA), 42 U.S.C. § 1997e(a), a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983 must exhaust his available administrative remedies.  *See Porter v. Nussle*, 534 U.S. 516, 532 (2002); *Booth v. Churner*, 532 U.S. 731, 733 (2001).  A prisoner must first exhaust available administrative remedies, even if the prisoner may not be able to obtain the specific type of relief he seeks in the state administrative process.  *See Porter*, 534 U.S. at 520; *Booth*, 532 U.S. at 741; *Knuckles El v. Toombs*, 215 F.3d 640, 642 (6th Cir. 2000); *Freeman v. Francis*, 196 F.3d 641, 643 (6th Cir. 1999).  In order to properly exhaust administrative remedies, prisoners must complete the administrative review process in accordance with the deadlines and other applicable procedural rules.  *Jones v. Bock*, 127 S. Ct. 910, 922-23 (2007); *Woodford v. Ngo*, 126 S. Ct. 2378, 2386 (2006).  "Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.'"  *Jones*, 127 S. Ct. at 922-23.

4

MDOC Policy Directive 03.02.130 (effective July 9, 2007), sets forth the applicable grievance procedures for prisoners in MDOC custody at the time relevant to this complaint. Inmates must first attempt to resolve a problem orally within two business days of becoming aware of the grievable issue, unless prevented by circumstances beyond his or her control *Id.* at ¶ P. If oral resolution is unsuccessful, the inmate may proceed to Step I of the grievance process and submit a completed grievance form within five business days of the attempted oral resolution. *Id.* at ¶ P. The Policy Directive also provides the following directions for completing grievance forms: "The issues shall be stated briefly. Information provided shall be limited to the <u>facts</u> involving the issue being grieved (i.e., who, what, when, where, why, how). Dates, times, places and names of all those involved in the issue being grieved are to be included." *Id.* at ¶ R (emphasis in original). The inmate submits the grievance to a designated grievance coordinator, who assigns it to a respondent. *Id.* at ¶ X.

If the inmate is dissatisfied with the Step I response, or does not receive a timely response, he may appeal to Step II by obtaining an appeal form within ten business days of the response, or if no response was received, within ten days after the response was due. *Id.* at ¶¶ T, DD. The respondent at Step II is designated by the policy, *e.g.,* the regional health administrator for a medical care grievances. *Id.* at ¶ GG. If the inmate is still dissatisfied with the Step II response, or does not receive a timely Step II response, he may appeal to Step III. *Id.* at ¶ FF. The Step III form shall be sent within ten business days after receiving the Step II response, or if no Step II response was received, within ten business days after the date the Step II response was due. *Id.* at ¶ FF. The Grievance and Appeals Section is the respondent for Step III grievances on behalf of the MDOC director. *Id.* at ¶ GG. Time limitations shall be adhered to by the inmate and staff at all steps of the

5

grievance process.  *Id.* at ¶ X.   "The total grievance process from the point of filing a Step I grievance to providing a Step III response shall be completed within 90 calendar days unless an extension has been approved . . . ."  *Id* at ¶ HH.

Plaintiff alleges that Defendant Wellman deprived him of a therapeutic diet to accommodate his acid reflux.  Plaintiff alleges that he is a chronic care patient/prisoner and that Defendant Wellman's denial of a therapeutic diet caused him to suffer from inflammation and stomach pain, chest pain and heartburn, a sore esophagus, and stress and high blood pressure. Plaintiff alleges that he filed grievance AMF-10-04-01604-12e4.  However, a review of the record shows that this grievance was filed against Defendant Comfort concerning Plaintiff's blood test and H pylori test results, and did not name Defendant Wellman.  (Docket #102, Exhibit B.)  The grievance Plaintiff filed against Defendant Wellman is AMF 2010-04-1602-12h1. (Docket #102, Exhibit C).  Plaintiff, however, has not pursued this grievance through to step III. (Docket #102, Exhibit D at ¶ 14).  Accordingly, in the opinion of the undersigned, Plaintiff failed to exhaust available administrative remedies of his claims against Defendant Wellman.

Plaintiff seeks to impose liability against AMF Warden Capello and Deputy Warden Larson, alleging that they were aware of the difficulties Plaintiff was experiencing, but failed to take the requisite action.  However, Plaintiff has failed to allege the requisite personal involvement of these Defendants in the complained-of acts.  Liability under Section 1983 must be based on more than merely the right to control employees.  *Polk Co. v. Dodson*, 454 U.S. 312, 325-26 (1981); *Monell v. New York City Department of Social Services*, 436 U.S. 658 (1978).  Thus, Section 1983 liability cannot be premised upon mere allegations of *respondeat superior*.  *Monell*, 436 U.S. at 691; *Polk*, 454 U.S. at 325.  A party cannot be held liable under Section 1983 absent a showing that the

party personally participated in, or otherwise authorized, approved or knowingly acquiesced in, the allegedly unconstitutional conduct. *See e.g. Leach v. Shelby Co. Sheriff*, 891 F.2d 1241, 1246 (6th Cir. 1989), *cert. denied*, 495 U.S. 932 (1990); *Hays v. Jefferson*, 668 F.2d 869, 874 (6th Cir.), *cert. denied*, 459 U.S. 833 (1982). *See also Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir.), *cert. denied* 469 U.S. 845 (1984).

Supervisory officials can be held liable for the acts of their subordinates only if plaintiff establishes that the supervisor failed to appropriately discharge his supervisory duties, and that this failure resulted in a denial or deprivation of plaintiff's federal rights. *See e.g. Leach*, 891 F.2d at 1246; *Hayes v. Vessey*, 777 F.2d 1149, 1154 (6th Cir. 1985). However, the failure of a supervisor to supervise, control or train the offending employee is not actionable absent a showing that the official implicitly encouraged, authorized, approved or knowingly acquiesced in, or in some other way directly participated in, the offensive conduct. *Leach*, 891 F.2d at 1246. Such a claim requires, at a minimum, that the official had knowledge of the offending employee's conduct at a time when the conduct could be prevented, or that such conduct was otherwise foreseeable or predictable. *See e.g. Gibson v. Foltz*, 963 F.2d 851, 854 (6th Cir. 1992). In addition, plaintiff must show that defendant had some duty or authority to act. *See e.g. Birrell v. Brown*, 867 F.2d 956, 959 (6th Cir. 1989) (lower level official not liable for shortcomings of building); *Ghandi v. Police Dept. of City of Detroit*, 747 F.2d 338, 351 (6th Cir. 1984) (mere presence at the scene is insufficient grounds to impose Section 1983 liability in the absence of a duty to act); *accord Hall v. Shipley*, 932 F.2d 1147 (6th Cir. 1991). In addition, merely bringing a problem to the attention of a supervisory official is not sufficient to impose such liability. *See Shelly v. Johnson*, 684 F. Supp. 941, 946 (W.D. Mich. 1987) (Hillman, C.J.), *aff'd* 849 F.2d 228 (6th Cir. 1988). Finally, supervisory liability claims

7

cannot be based on simple negligence. *Leach*, 891 F.2d at 1246; *Weaver v. Toombs*, 756 F. Supp. 335, 337 (W.D. Mich. 1989), *aff'd* 915 F.2d 1574 (6th Cir. 1990).

Plaintiff has not alleged facts establishing that Defendants Capello and Larson personally participated in the activity which forms the basis of his claim. The only roles these defendants had in this action involve a mere failure to act, not active unconstitutional behavior. Defendants Capello and Larson cannot be liable for such conduct under § 1983. *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999), *cert. denied*, 530 U.S. 1264 (2000). Accordingly, in the opinion of the undersigned, Defendants Capello and Larson are entitled to summary judgment for lack of personal involvement.

Plaintiff also alleges that he was denied his due process rights when Defendants Kulie and Rule violated MDOC policy and procedure by improperly confiscating his personal property after his transfer to AMF. Defendants Kulie and Rule assert that Plaintiff's due process claim is barred by the doctrine of *Parratt v. Taylor*, 451 U.S. 527 (1981), *overruled in part by Daniels v. Williams*, 474 U.S. 327 (1986). Under *Parratt*, a person deprived of property by a "random and unauthorized act" of a state employee has no federal due process claim unless the state fails to afford an adequate post-deprivation remedy. If an adequate post-deprivation remedy exists, the deprivation, although real, is not "without due process of law." *Parratt*, 451 U.S. at 537. This rule applies to both negligent and intentional deprivation of property, as long as the deprivation was not done pursuant to an established state procedure. *See Hudson v. Palmer*, 468 U.S. 517, 530-36 (1984). Because Plaintiff's claim is premised upon allegedly unauthorized negligent acts of a state official, he must plead and prove the inadequacy of state post-deprivation remedies. *See Copeland v. Machulis*, 57 F.3d 476, 479-80 (6th Cir. 1995); *Gibbs v. Hopkins*, 10 F.3d 373, 378 (6th Cir. 1993).

8

Under settled Sixth Circuit authority, a prisoner's failure to sustain this burden requires dismissal of his § 1983 due-process action. *See Brooks v. Dutton*, 751 F.2d 197 (6th Cir. 1985).

Plaintiff has not sustained his burden in this case. Plaintiff has not alleged that state post-deprivation remedies are inadequate. Moreover, numerous state post-deprivation remedies are available to him. First, a prisoner who incurs a loss through no fault of his own may petition the institution's Prisoner Benefit Fund for compensation. MICH. DEP'T OF CORR., Policy Directive 04.07.112, ¶ B (effective Nov. 15, 2004). Aggrieved prisoners may also submit claims for property loss of less than $1,000 to the State Administrative Board. MICH. COMP. LAWS § 600.6419; Policy Directive, 04.07.112, ¶ B. Alternatively, Michigan law authorizes actions in the Court of Claims asserting tort or contract claims "against the state and any of its departments, commissions, boards, institutions, arms, or agencies." MICH. COMP. LAWS § 600.6419(1)(a). The Sixth Circuit specifically has held that Michigan provides adequate post-deprivation remedies for deprivation of property. *See Copeland*, 57 F.3d at 480. Plaintiff does not allege any reason why a state-court action would not afford him complete relief for the deprivation, either negligent or intentional, of his personal property. Plaintiff was provided an Administrative Hearing to determine whether his personal property was allowable. Plaintiff failed to pursue any a post-deprivation remedy following the Hearing Officer's disposition. Accordingly, Plaintiff's claim should be dismissed pursuant to *Parratt*.

Plaintiff also claims that his due process rights were violated when he was transferred to another prison and when his security level was increased after he stabbed another inmate with his scissors. "The Fourteenth Amendment protects an individual from deprivation of life, liberty or property, without due process of law." *Bazzetta v. McGinnis*, 430 F.3d 795, 801 (6th Cir. 2005). To

9

establish a Fourteenth Amendment procedural due process violation, a plaintiff must show that one of these interests is at stake. *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005). Analysis of a procedural due process claims involves two steps: "[T]he first asks whether there exists a liberty or property interest which has been interfered with by the State; the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient." *Ky. Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989). The Supreme Court long has held that the Due Process Clause does not protect every change in the conditions of confinement having an impact on a prisoner. *See Meachum v. Fano*, 427 U.S. 215, 225 (1976). In *Sandin v. Conner*, 515 U.S. 472, 484 (1995), the Court set forth the standard for determining when a state-created right creates a federally cognizable liberty interest protected by the Due Process Clause. According to the *Sandin* Court, a prisoner is entitled to the protections of due process only when the sanction "will inevitably affect the duration of his sentence" or when a deprivation imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 486-87; *see also Jones v. Baker*, 155 F.3d 810, 812 (6th Cir. 1998); *Rimmer-Bey v. Brown*, 62 F.3d 789, 790-91 (6th Cir. 1995). The *Sandin* Court concluded that mere placement in administrative segregation did not implicate a liberty interest because the segregation at issue in that case did not impose an atypical and significant hardship. *Sandin*, 515 U.S. at 484; *Wilkinson v. Austin*, 545 U.S. 209, 222-23 (2005).

Furthermore, it is well-settled that a prisoner does not have a constitutional right to placement in any particular prison. *Olim v. Wakinekona*, 461 U.S. 238, 245; 103 S.Ct. 1741, 1745 (1983); *Meachum v. Fano*, 427 U.S. 215, 225; 96 S.Ct. 2532, 2538 (1976). In *Meachum*, the United States Supreme Court determined that, after conviction, criminal defendants' liberty interests are

10

extinguished to the point that the State is free to confine them in any of its prisons. *Meachum*, 427 U.S. at 224.

Plaintiff does not have a constitutional right to select his place of confinement, nor does he have a justifiable expectation that he will be incarcerated in a particular prison. Plaintiff was reclassified to administrative segregation prior to his transfer to AMF by the Security Classification Committee at Carson City Correctional Facility after he stabbed another inmate. Plaintiff was then transferred to AMF to continue his incarceration in administrative segregation. (Docket #69, Exhibit C.) As noted in *Sandin*, mere placement in administrative segregation does not implicate a liberty interest since the segregation here does not impose an atypical and significant hardship. Plaintiff clearly has failed to allege any facts showing that his confinement in segregation imposes an atypical and significant hardship. Accordingly, Plaintiff's claim should be dismissed.

Plaintiff claims that he was denied access to the courts on at least two occasions. Plaintiff asserts that Defendants Raymond and Smith refused to give him a grievance form to contest the confiscation of his personal property. Plaintiff also contends that Defendant Tollefson failed to provide him with all the supplies he requested to do his legal work, causing him stress and high blood pressure. It is well established that prisoners have a constitutional right of access to the courts. *Bounds v. Smith*, 430 U.S. 817, 821 (1977). The principal issue in *Bounds* was whether the states must protect the right of access to the courts by providing law libraries or alternative sources of legal information for prisoners. *Id.* at 817. The Court further noted that in addition to law libraries or alternative sources of legal knowledge, the states must provide indigent inmates with "paper and pen to draft legal documents, notarial services to authenticate them, and with stamps to mail them." *Id.* at 824-25. An indigent prisoner's constitutional right to legal resources and materials is not,

however, without limit.  In order to state a viable claim for interference with his access to the courts,

a plaintiff must show "actual injury."  *Lewis v. Casey*, 518 U.S. 343, 349 (1996); *see also Talley-Bey*

*v. Knebl*, 168 F.3d 884, 886 (6th Cir. 1999); *Knop v. Johnson*, 977 F.2d 996, 1000 (6th Cir. 1992);

*Ryder v. Ochten*, No. 96-2043, 1997 WL 720482, at *1-2 (6th Cir. Nov. 12, 1997).  In other words,

a plaintiff must plead and demonstrate that the shortcomings in the prison legal assistance program

or lack of legal materials have hindered, or are presently hindering, his efforts to pursue a

nonfrivolous legal claim.  *Lewis*, 518 U.S. at 351-353; *see also Pilgrim v. Littlefield*, 92 F.3d 413,

416 (6th Cir. 1996).  An inmate must make a specific claim that he was adversely affected or that

the litigation was prejudiced.  *Vandiver v. Niemi*, No. 94-1642, 1994 WL 677685, at *1 (6th Cir.

Dec. 2, 1994).

   Plaintiff claims that he was refused a grievance form to contest the confiscation of

his personal property.  Plaintiff attaches a copy of his step II grievance response regarding this issue

to his Amended Complaint as Exhibit AA7.  In the response, Defendant Capello noted that Plaintiff

was on modified access to the grievance procedure.  However, Defendant Capello also found that

the disposition of Plaintiff's property items would be established through the Administrative Hearing

process.  As noted above, Plaintiff did receive an Administrative Hearing regarding his property

items.  Moreover, Plaintiff was able to raise the issue of refusal of a grievance form throughout the

grievance process, exhausting his administrative remedies.  Plaintiff alleges that due to the delay of

supplies he requested for his legal work, he suffered stress and high blood pressure.  However,

Plaintiff has failed to show that he was actually injured by the lack of legal materials.  Accordingly,

in the opinion of the undersigned, Defendants are entitled to summary judgment on Plaintiff's access

to courts claims.

Plaintiff claims that Defendant Tollefson delayed Plaintiff's medical treatment, depriving him of his Eighth Amendment rights. The Eighth Amendment prohibits the infliction of cruel and unusual punishment against those convicted of crimes. U.S. Const. amend. VIII. The Eighth Amendment obligates prison authorities to provide medical care to incarcerated individuals, as a failure to provide such care would be inconsistent with contemporary standards of decency. *Estelle v. Gamble*, 429 U.S. 102, 103-04 (1976). The Eighth Amendment is violated when a prison official is deliberately indifferent to the serious medical needs of a prisoner. *Id.* at 104-05; *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001).

A claim for the deprivation of adequate medical care has an objective and a subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To satisfy the objective component, the plaintiff must allege that the medical need at issue is sufficiently serious. *Id.* In other words, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm. *Id.* The objective component of the adequate medical care test is satisfied "[w]here the seriousness of a prisoner's need[ ] for medical care is obvious even to a lay person." *Blackmore v. Kalamazoo County*, 390 F.3d 890, 899 (6th Cir. 2004). If, however the need involves "minor maladies or non-obvious complaints of a serious need for medical care," *Blackmore*, 390 F.3d at 898, the inmate must "place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment." *Napier v. Madison County, Ky.*, 238 F.3d 739, 742 (6th Cir. 2001).

The subjective component requires an inmate to show that prison officials have "a sufficiently culpable state of mind in denying medical care." *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000) (citing *Farmer*, 511 U.S. at 834). Deliberate indifference "entails something more than mere negligence," *Farmer*, 511 U.S. at 835, but can be "satisfied by something less than acts

or omissions for the very purpose of causing harm or with knowledge that harm will result." *Id.*

Under *Farmer*, "the official must both be aware of facts from which the inference could be drawn

that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837.

Not every claim by a prisoner that he has received inadequate medical treatment states

a violation of the Eighth Amendment. *Estelle*, 429 U.S. at 105. As the Supreme Court explained:

> [A]n inadvertent failure to provide adequate medical care cannot be
> said to constitute an unnecessary and wanton infliction of pain or to be
> repugnant to the conscience of mankind. Thus, a complaint that a
> physician has been negligent in diagnosing or treating a medical
> condition does not state a valid claim of medical mistreatment under
> the Eighth Amendment. Medical malpractice does not become a
> constitutional violation merely because the victim is a prisoner. In
> order to state a cognizable claim, a prisoner must allege acts or
> omissions sufficiently harmful to evidence deliberate indifference to
> serious medical needs.

*Estelle*, 429 U.S. at 105-06 (quotations omitted). Thus, differences in judgment between an inmate

and prison medical personnel regarding the appropriate medical diagnoses or treatment are not

enough to state a deliberate indifference claim. *Sanderfer*, 62 F.3d at 154-55; *Ward v. Smith*, No.

95-6666, 1996 WL 627724, at *1 (6th Cir. Oct. 29, 1996). This is so even if the misdiagnosis results

in an inadequate course of treatment and considerable suffering. *Gabehart v. Chapleau*, No.

96-5050, 1997 WL 160322, at *2 (6th Cir. Apr. 4, 1997).

The Sixth Circuit distinguishes "between cases where the complaint alleges a

complete denial of medical care and those cases where the claim is that a prisoner received

inadequate medical treatment." *Westlake v. Lucas*, 537 F.2d 857, 860 n. 5 (6th Cir. 1976). Where,

as here, "a prisoner has received some medical attention and the dispute is over the adequacy of the

treatment, federal courts are generally reluctant to second guess medical judgments and to

constitutionalize claims which sound in state tort law." *Id.*; *see also Perez v. Oakland County*, 466

14

F.3d 416, 434 (6th Cir. 2006); *Kellerman v. Simpson*, 258 F. App'x 720, 727 (6th Cir. 2007); *McFarland v. Austin*, 196 F. App'x 410 (6th Cir. 2006); *Edmonds v. Horton*, 113 F. App'x 62, 65 (6th Cir. 2004); *Brock v. Crall*, 8 F. App'x 439, 440 (6th Cir. 2001); *Berryman v. Rieger*, 150 F.3d 561, 566 (6th Cir. 1998).

Plaintiff alleges that after Healthcare failed or forgot to pick up his medical kite for undisclosed services, Plaintiff gave it to Defendant Tollefson for delivery to the Healthcare kite box on March 1, 2010, but that Defendant Tollefson failed to deliver the kite. However, Plaintiff fails to provide any details regarding his alleged need for medical services. Thus, Plaintiff has failed to establish that he suffered from a serious medical condition. Moreover, Plaintiff's fails to allege that the delay in medical treatment had a detrimental effect on his health. Accordingly, in the opinion of the undersigned, Defendant Tollefson is entitled to summary judgment on Plaintiff's claim that he was denied medical care in violation of the Eighth Amendment.

Plaintiff also alleges that his Eighth Amendment rights were violated by Defendant Bastian when he tampered with Plaintiff's food, spat on Plaintiff's food tray, served him breakfast that caused sharp pains in Plaintiff's stomach, and served him food loaf. In support of his motion for summary judgment, Defendant Bastian attests that Plaintiff filed grievance number AMF-10-04-1839-17a on April 24, 2010, alleging that Defendant Bastian had tampered with his food. In the grievance, Plaintiff claimed that he became ill after eating the food. However, the grievance investigation found that Plaintiff never reported the incident to supervisory housing staff and that there were no health records to support the claim. (Docket #77, Exhibit A at ¶ 6.) On May 2, 2010, Plaintiff filed grievance number AMF-10-05-2022-17i, alleging that Defendant Bastian talked over Plaintiff's food tray without a "mouth cover." The grievance investigation found that because

15

Defendant Bastian did not wear a beard, he was not required to wear a mouth cover while passing out food trays.  (Docket #77, Exhibit A at ¶ 7.)  On April 9, 2010, Defendant Bastian went to Plaintiff's cell to retrieve his food tray, and ordered Plaintiff to return the tray.  Plaintiff refused, and when Defendant Bastian repeated the order, Plaintiff said "I told you no, get away from my door bitch."  Defendant Bastian closed Plaintiff's food slot and issued Plaintiff a major misconduct ticket for disobeying a direct order.  (Docket #77, Exhibit A at ¶¶ 8-9.)  Defendant Bastian states that MDOC Policy Directive 04.05.120 ¶RR provides that a segregation prisoner who refuses to return his food tray may be placed on a food loaf restriction, and that Plaintiff was placed on this restriction for three days.  Plaintiff was also found guilty of the misconduct charge following a hearing. (Docket #77, Exhibit A at ¶¶ 10-12.)

The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes.  Punishment may not be "barbarous" nor may it contravene society's "evolving standards of decency."  *Rhodes v. Chapman*, 452 U.S. 337, 345-46 (1981).  The Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain."  *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346).  The deprivation alleged must result in the denial of the "minimal civilized measure of life's necessities."  *Rhodes*, 452 U.S. at 347; *see also Wilson v. Yaklich*, 148 F.3d 596, 600-01 (6th Cir. 1998).  The Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement."  *Rhodes*, 452 U.S. at 348 (citation omitted).  Moreover, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment."  *Ivey*, 832 F.2d at 954.

16

In order for a prisoner to prevail on an Eighth Amendment claim, he must show that he faced a sufficiently serious risk to his health or safety and that the defendant official acted with "'deliberate indifference' to inmate health or safety." *Mingus v. Butler*, 591 F.3d 474, 479-80 (6th Cir. 2010) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (applying deliberate indifference standard to medical claims); *see also Helling v. McKinney*, 509 U.S. 25, 35 (1993) (applying deliberate indifference standard to conditions of confinement claims)).

In this case, Plaintiff refused to return his food tray while in segregation. A food loaf restriction was warranted according to MDOC Policy Directive, Segregation, 04.05.120, under the heading "Additional Restrictions for Safety and Security." Plaintiff has not provided any evidence of a sufficiently serious risk to his health when he was restricted to food loaf for three days. Moreover, as noted above, Defendant Bastian did not act with deliberate indifference to Plaintiff's health or safety when he requested a food loaf restriction. Thus, the food loaf restriction does not constitute cruel and unusual punishment within the meaning of the Eighth Amendment.

Furthermore, Plaintiff's numerous allegations regarding the quality of the food are short of evidence to establish his Eighth Amendment claim. Defendant Bastian does not prepare the meals, but only serves meals in the Housing Unit by removing the lid from the food tray and then immediately placing the tray on the prisoner's door slot. When Plaintiff filed a grievance, AMF-10-04-1839-17a, alleging that Defendant Bastian tampered with his food, the investigation found that Plaintiff never reported this incident to housing supervisory staff and there were no health records to support his claim. Plaintiff filed a grievance, AMF-10-05-2022-17i, alleging that Defendant Bastian talked over his food tray without a mouth cover. However, the investigation concluded that since Defendant Bastian did not have a beard, he was not required to wear a mouth guard while

17

passing out food trays.  Nor does an allegation that Defendant spit in Plaintiff's food on a single occasion rise to the level required for a constitutional violation.  *DeMallory v. Cullen*, 855 F.2d 442, 444 (7th Cir. 1988); *Carson v. Birkett*, 2005 WL 1981294, *1 (E.D. Mich. 2005) (unpublished) (attached).  Not only has Plaintiff failed to provide any medical records to support his claim, but he has also failed to produce any evidence showing that Defendant Bastian was deliberately indifferent to Plaintiff's health and safety.  Plaintiff's conclusory allegations regarding his food cannot support his Eighth Amendment claim.  Accordingly, in the opinion of the undersigned, Plaintiff's Eighth Amendment claim against Defendant Bastian should be dismissed.

Plaintiff also claims that Defendant Bastian issued a misconduct on him in retaliation for exercising his right to seek redress.  Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution.  *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc).  In order to set forth a First Amendment retaliation claim, a plaintiff must establish that:  (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct.  *Thaddeus-X*, 175 F.3d at 394.  Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct.  *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

Plaintiff alleges that Defendant Bastian issued him a false misconduct violation for not returning his food tray.  As a result of this incident, Plaintiff received a food loaf restriction for three days.  Plaintiff alleges that Defendant Bastian's actions were retaliation for filing grievances.

For adverse action to be motivated by protected conduct in retaliation, the protected conduct must precede the adverse action. Plaintiff filed two grievances against Defendant Bastian on April 13, 2010 and April 21, 2010. The alleged adverse action, a food loaf restriction request by Defendant Bastian, was taken on April 9, 2010, four days *before* the first grievance was filed. Accordingly, Defendant Bastian is entitled to summary judgment on Plaintiff's retaliation claim because Plaintiff's allegations fail to establish the required causal-connection between the protected conduct and the adverse action.

Plaintiff sues Defendants in their official and individual capacities. In all three of the motions for summary judgment, Defendants assert that they are entitled to summary judgment on Plaintiff's official capacity claims against them because such claims are barred by the Eleventh Amendment. Any claims against the individually-named Defendants in their official capacities do not state a claim upon which relief can be granted. *See Will v. Michigan Department of State Police*, 491 U.S. 58 (1989) (claims against a state agency or an official in his/her official capacity are claims against the state, and are not claims against a "person" subject to Section 1983 liability); *Frederick v. Abramajtys*, No. 94-1935, 1995 WL 564321, **1 (6th Cir. Sept. 21, 1995) (unpublished). Moreover, the Eleventh Amendment bars suit against the State or one of its agencies in federal court unless the state has given express consent, regardless of the relief sought. *Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 100 (1984), overruled in part on other grounds, *Will*, 491 U.S. 58; *Alabama v. Pugh*, 438 U.S. 781, 782 (1978) (State and Board of Corrections).[1] The State of Michigan has not consented to civil rights suits in the federal courts. *See Abick v. Michigan*, 803

---

[1]The Sixth Circuit has held that since an official capacity suit for retroactive relief, such as monetary damages, is deemed to be against the State, whose officers are the nominal defendants, the claim is barred by the Eleventh Amendment. *Doe v. Wigginton*, 21 F.3d 733, 736-737 (6th Cir. 1994).

19

F.2d 874, 877 (6th Cir. 1986). The Eleventh Amendment therefore bars official-capacity suits for damages against its employees. Therefore, any official capacity claims are properly dismissed.

Defendants also claim that Plaintiff's individual capacity claims are barred by qualified immunity because Plaintiff has failed to show a violation of clearly established law. Government officials, performing discretionary functions, generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Dietrich v. Burrows*, 167 F.3d 1007, 1012 (6th Cir. 1999); *Turner v. Scott*, 119 F.3d 425, 429 (6th Cir. 1997); *Noble v. Schmitt*, 87 F.3d 157, 160 (6th Cir. 1996); *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). An "objective reasonableness" test is used to determine whether the official could reasonably have believed his conduct was lawful. *Dietrich*, 167 F.3d at 1012; *Anderson v. Creighton*, 483 U.S. 635, 641 (1987). "Qualified immunity balances two important interests-the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 129 S. Ct. 808, 815 (2009).

In making a qualified immunity determination the court must decide whether the facts as alleged or shown make out a constitutional violation or whether the right that was allegedly violated was a clearly established right at the time of the alleged misconduct. *Id.* at 816. If the court can conclude that either no constitutional violation occurred or that the right was not clearly established, qualified immunity is warranted. The court may consider either approach without regard to sequence. *Id.* As noted above, Defendants did not violate Plaintiff's constitutional rights. Accordingly, Defendants are entitled to qualified immunity.

For the foregoing reasons, I recommend that Defendants' motions for summary judgment (docket ## 68, 76, 101) be granted.  I further recommend that Plaintiff's motion for sanctions against Defendants Capello, Bastian, Kulie, Rule, Larson, Tollefson, Smith, Raymond, and Wellman (docket #96) be denied as moot.  Should the court adopt the report and recommendation in this case, Plaintiff's only remaining claims will be those against Defendant M. Comfort, M.D.[2]

NOTICE TO PARTIES:  Objections to this Report and Recommendation must be served on opposing parties and filed with the Clerk of the Court within fourteen (14) days of receipt of this Report and Recommendation.  28 U.S.C. § 636(b)(1)(c); Fed. R. Civ. P. 72(b); W.D. Mich. LCivR 72.3(b).  Failure to file timely objections constitutes a waiver of any further right to appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  *See also Thomas v. Arn*, 474 U.S. 140 (1985).

 /s/ Timothy P. Greeley
TIMOTHY P. GREELEY
UNITED STATES MAGISTRATE JUDGE

Dated:  August 31, 2011

---

[2]Defendant M. Comfort, M.D., filed a motion to dismiss on July 29, 2011.